IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FREDDIE J. KELLY,
        Plaintiff,

v.                                                                           Civil Action No. 3:14-cv-121

SUNTRUST BANK et al.,
        Defendants.

## OPINION

The pro se plaintiff, Freddie J. Kelly, brings claims against various defendants under the Fair Credit Reporting Act ("FCRA"). In short, he claims that his lender SunTrust Bank ("SunTrust"), and the three national consumer credit reporting agencies ("CRAs"), Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union LLC (collectively, the "CRA Defendants"), violated FCRA by reporting his SunTrust loan as delinquent in certain months. Unfortunately, Kelly simply misunderstands the way these entities report payment delinquencies on consumer reports. Accordingly, the Court resolves this confusion by granting summary judgment in favor of the defendants.

### I. BACKGROUND

On June 10, 2009, Kelly entered into a $22,435.22 loan agreement with a car dealership to purchase a vehicle. SunTrust purchased the loan from the dealership. Under the agreement, Kelly owed sixty monthly payments of $445.43. He owed payment on the twenty-fifth day of each month. If Kelly failed to pay within seven days of a due date, SunTrust would assess a five percent late fee.

Kelly admittedly made late payments for the months of October 2011, November 2011, and January 2012. Indeed, he included the amount of the five percent late fee in his payment

totals. He made the payment due October 25, 2011, on November 25, 2011, thirty-one days after the due date. He made the payment due November 25, 2011, on December 24, 2011, which fell on a Saturday. SunTrust did not post Kelly's payment until December 27, 2011, because SunTrust was closed on December 25, 2011, a Sunday, and December 26, 2011, a federal holiday. Thus, Kelly's payment posted on December 27, 2011, thirty-two days after the original due date. Finally, Kelly made the payment due January 25, 2012, on February 24, 2012, thirty days after the due date.

Every time Kelly failed to make a payment within thirty days of a due date, SunTrust reported his account to the CRA Defendants as between thirty and fifty-nine days delinquent.[1] Thus, the CRA Defendants reported Kelly's account delinquent in the months of November 2011, December 2011, and February 2012. In other words, Kelly's consumer report noted delinquencies in the months that a payment became thirty to fifty-nine days delinquent, *not* in the month the delinquent payment was due.

Kelly does not dispute that he paid certain loan payments late. Rather, he disputes that he crossed the thirty-day threshold in the months in question. Kelly sent eight letters to the CRA Defendants about the reported delinquencies between January 8 and April 28, 2012.[2] Any time one of the CRA Defendants received a letter from Kelly, it responded by generating an automated consumer dispute verification ("ACDV") and sending it to SunTrust.[3] The CRA

---

[1] As recommended by the Consumer Data Industry Association, SunTrust and the CRAs use the Metro 2 Format to report credit information. (*See* Mem. Supp. CRAs' Mot. Summ. J., Ex. B, at 15.). In the relevant months on Kelly's account, SunTrust used Status Code 71, which indicates an account thirty to fifty-nine days past the due date. (*Id.* at 18.)

[2] Kelly also disputed the reported delinquencies directly with SunTrust.

[3] Kelly argues that he did not intend some of the letters as official disputes, but that the CRA Defendants treated each letter as such. The Court agrees with the defendants that doing so only benefited Kelly. Moreover, Kelly points to no provision, and the Court can find none, that says

Defendants use ACDVs to inform furnishers of credit information, like SunTrust, that a consumer lodged a dispute with a CRA about information contained in his consumer report. The furnisher then reviews the information, verifies or corrects it, and sends a response to the CRA. In this case, the CRA Defendants generated an ACDV each time they received a letter from Kelly. Each time, SunTrust verified that the delinquencies noted on Kelly's consumer report were accurate.

## II. **STANDARD OF REVIEW**

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56(a) mandates granting summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* "Courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citation, quotation, and alterations omitted). Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). The non-movant may not rest on claims within its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks and emphasis omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In cases involving cross-motions for summary judgment, "the court must review each motion separately on its own merits to

---

that treating a consumer letter which asserts a dispute about his consumer report as an official dispute violates FCRA.

determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal citation omitted). Finally, relevant here, "[courts] are always obliged to construe liberally the contentions being pursued by pro se parties." *Sinclair v. Mobile 360, Inc.*, 417 F. App'x 235, 243 (4th Cir. 2011) (unpublished) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)) (applying the liberal construction for pro se parties to consideration of evidence at the summary judgment stage).

### III. <u>DISCUSSION</u>

Kelly claims that SunTrust and the CRA Defendants failed to reasonably reinvestigate the information in his consumer report when he disputed the reporting. Additionally, he claims that SunTrust violated the notice provisions of FCRA by failing to notify him prior to, or within thirty days of, passing negative credit information to the CRA Defendants. The Court struggles to discern which FCRA provisions Kelly thinks each defendant violated. Nevertheless, applying the liberal construction standard, the Court evaluates Kelly's claims under the provisions listed below.

#### *A. FCRA*

Congress enacted FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). It assigns duties both to furnishers of credit information and to CRAs, including duties when furnishing, reporting, and responding to disputes regarding consumer information.

##### *i. Furnishers' FCRA Duties*

Under FCRA, furnishers must provide accurate information to CRAs. 15 U.S.C. § 1681s-2(a). This includes a duty to correct and update inaccurate information, *id.* at § 1681s-2(a)(2), and to provide notice to CRAs of delinquent accounts, *id.* at § 1681s-2(a)(5). It also

includes a duty to respond to consumer disputes filed directly with the furnisher.[4] *Id.* at § 1681s-2(a)(8). When a consumer does so, the furnisher must

> (i) conduct an investigation with respect to the disputed information;
> (ii) review all relevant information provided by the consumer with the notice;
> (iii) complete [the] investigation of the dispute and report the results of the investigation to the consumer [within 30 days of receiving the dispute]; and
> (iv) if the investigation finds that the information reported was inaccurate, promptly notify each consumer reporting agency to which the [furnisher] furnished the inaccurate information . . . and provide to the agency any correction to that information that is necessary to make the information . . . accurate.

*Id.* at § 1681s-2(a)(8)(E).

Alternatively, consumers can dispute the accuracy of their consumer report with a CRA. In that case, after receiving notice of the dispute from the CRA, the furnisher must

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency . . . ;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the [furnisher] furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

---

[4] While consumers can dispute information directly with a furnisher, they can only bring a failure to reinvestigate claim against a furnisher if their dispute goes first to a CRA. *See infra* Part III.A.iii.

15 U.S.C. § 1681s-2(b)(1).

### ii. CRAs' FCRA Duties

FCRA instructs CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Just as they can with a furnisher, a consumer can dispute information in their consumer report directly with a CRA. *Id.* at § 1681i(a)(1). Upon receiving a dispute, the CRA must, within thirty days, conduct a "reasonable reinvestigation" to determine the information's accuracy. *Id.* at § 1681i(a)(1)(A). The reinvestigation includes notifying the furnisher of the disputed information and providing all relevant information that the consumer provided to them. *Id.* at § 1681i(a)(2). If the CRA, after its reinvestigation, finds inaccurate, incomplete, or unverifiable information, it must "promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and . . . notify the furnisher of that information that the information has been modified or deleted from the file." *Id.* at § 1681i(a)(5)(A).

### iii. Private Enforcement of Reinvestigation Duties[5]

Generally, consumers can bring private causes of action against both furnishers and CRAs for willful or negligent violations of FCRA provisions, 15 U.S.C. §§ 1681n, 1681o, although the statute limits liability for certain FCRA violations, *see, e.g.*, 15 U.S.C. § 1681s-2(c). Notably, consumers can challenge the adequacy of either a furnisher's or a CRA's reinvestigation efforts. If, however, a furnisher or CRA proves the accuracy of the disputed

---

[5] The statute uses the term "reasonable reinvestigation" when describing CRAs' duties under 15 U.S.C. § 1681i(a)(1), while it uses the term "investigation" to describe furnishers duties under § 1681s-2(b)(1)(a). For consistency, the Court will use "reinvestigation" to refer to both.

information, the consumer's claim fails. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 451 (E.D. Va. 2009).

FCRA does not specifically define "reasonable reinvestigation." *See* 15 U.S.C. §§ 1681i(a)(1), 1681s-2(b)(1)(A). Nonetheless, numerous courts have held that where CRAs and furnishers follow the ACDV process, they have conducted a reasonable reinvestigation. *See Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 151 (4th Cir. 2008) (detailing the seriousness with which CRAs take ACDVs); *Dickens v. Trans Union Corp.*, 18 F. App'x. 315, 319 (6th Cir. 2001) (denying a FCRA claim where the furnisher and CRAs followed the ACDV process).

A consumer challenging a CRA's reinvestigation efforts must show (1) that he disputed the accuracy of an item in his file; (2) the CRA failed to conduct a reasonable reinvestigation; and (3) that a reasonable reinvestigation by the CRA could have uncovered the inaccuracy. *Burke v. Experian Info. Solutions, Inc.*, No. 1:10-cv-1064 (AJT/TRJ), 2011 U.S. Dist. LEXIS 28896, *10 (E.D. Va. Mar. 18, 2011) (citation omitted) (construing a claim for violation of a CRAs reinvestigation duties under 15 U.S.C. § 1681i(a)(1)(A)). A consumer challenging a furnisher's reinvestigation efforts[6] must show that the furnisher failed to act with a "degree of careful inquiry" to ensure accurate information. *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430–31 (4th Cir. 2004).

---

[6] A consumer may bring a failure to reinvestigate claim against a furnisher only if the consumer originally disputed the accuracy of his consumer report directly with the CRA. *See Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059–60 (9th Cir. 2002) (stating that furnishers' duty to reinvestigate based on a dispute directly from a consumer, rather than a dispute through a CRA, arise under § 1681s-2(a), which § 1681s-2(c) exempts from liability).

7

### B. *Kelly's Claims*

#### i. *Against SunTrust*

Kelly alleges that SunTrust: (1) provided inaccurate information to the CRA Defendants,[7] and (2) failed to inform him within 30 days of providing negative information to the CRA Defendants. Both of these claims arise under § 1681s-2(a). FCRA plainly bars these claims, because no private cause of action exists for violations of duties arising under § 1681s-2(a). 15 U.S.C. § 1681s-2(c)(1); *Saunders*, 526 F.3d at 149. Accordingly, the Court grants summary judgment for SunTrust on both claims.

#### ii. *Against SunTrust and the CRA Defendants*

Kelly also alleges that both SunTrust and the CRA Defendants failed to reinvestigate his disputes.[8] As previously discussed, to establish a failure to reinvestigate claim, a plaintiff must first establish that the disputed information was in fact inaccurate. *See Hinton*, 654 F. Supp. 2d at 451. In this case, the delinquencies reported in Kelly's consumer report were accurate.

Kelly made the payment due October 25, 2011, on November 25, 2011, thirty-one days after the due date. He made the payment due November 25, 2011, on December 24, 2011, which fell on a Saturday. SunTrust was closed on December 25, 2011, a Sunday, and December 26, 2011, a federal holiday. Thus, Kelly's payment posted on December 27, 2011, thirty-two days after the original due date. Finally, Kelly made the payment due January 25, 2012, on February 24, 2012, thirty days after the due date. Accordingly, SunTrust accurately reported that Kelly's

---

[7] Even if the Court reviewed the merits of this claim, the information Kelly provided to the CRA Defendants was accurate. *See infra* Part III.B.ii.

[8] As best as the Court can decipher, Kelly also complains that both SunTrust and the CRA Defendants retroactively modified his consumer report after he sent them dispute letters. Even if SunTrust and the CRA Defendants did update Kelly's account after he submitted a dispute letter, this does not violate the law. Accurate negative credit information, while unpleasant to the consumer, cannot sustain a FCRA claim against the furnisher which provides it, or the CRAs which report it.

account contained a delinquency between thirty and fifty-nine days *in* November 2011, December 2011, and February 2012.

The Court emphasizes the word *in* for a reason, as the months seem to provide the core of Kelly's confusion in this case. Kelly was not delinquent for the payment due October 25, 2011, for example, until November 24, 2011, thirty days after the due date. Thus, SunTrust reported him delinquent *in* the month of November 2011, though the delinquent payment was *for* the month of October 2011.

The payment due November 25, 2011, is more complex, but no less accurate. Kelly owed payment for that month on November 25, 2011. He became thirty days delinquent on December 25, 2011. Kelly delivered a payment to SunTrust on Saturday, December 24, 2011, a non-business day. The bank remained closed the next two days—December 25, 2011, a Sunday, and December 26, 2011, a federal holiday. Thus, the payment posted on the next day the bank opened its doors, December 27, 2011. This made the payment thirty-two days late. Accordingly, SunTrust reported Kelly delinquent, and the CRA Defendants noted it in his consumer report.

Kelly's argues that SunTrust had a duty to post his December 24, 2011 payment on the date he delivered it to the bank. This is incorrect. SunTrust posts payments on the date of receipt, as long as the payment arrives on a business day, or the account is an open-ended credit account. (SunTrust's Mem. Opp'n to Pl.'s Mot. Summ. J. 9–10.) Kelly's account is not open-ended,[9] so SunTrust had no duty to immediately post payments made on a non-business day.

---

[9] An open-ended credit account is one which: "(i) The creditor reasonably contemplates repeated transactions; (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid." 12 C.F.R. § 1026.2(20). Indeed, Kelly admits that his

9

Additionally, SunTrust provided Kelly with a receipt for his payment that informed him that the payment would not post until December 27, 2011. (SunTrust's Mem. Opp'n to Pl.'s Mot. Summ. J. 9.) Not only did SunTrust have no duty to post payment on the day Kelly delivered his payment, but it also told Kelly that it would not do so.

Accordingly, SunTrust accurately reported all of the delinquencies on Kelly's account. These delinquencies occurred *in* the months of November 2011, December 2011, and February 2012, *for payments due* in the months of October 2011, November 2011, and January 2012, respectively. Even if the reporting was not accurate, however, SunTrust and the CRA Defendants conducted reasonable reinvestigations in response to Kelly's disputes. The CRA Defendants responded to each dispute using the ACDV process. Each investigation came to the same conclusion: the information was accurate. Kelly provides no evidence, aside from pure speculation, that the CRA Defendants acted unreasonably. He also has not shown that SunTrust's reinvestigation was anything less than careful or searching. Finally, he cannot overcome the simple fact that the information in his consumer report is accurate. For these reasons, the Court enters summary judgment in favor of both defendants.

### III. CONCLUSION

In summary, SunTrust furnished accurate information to the CRA Defendants when it reported Kelly's account delinquent in November 2011, December 2011, and February 2012. This precludes all of Kelly's claims. Even putting accuracy aside, Kelly fails to show that SunTrust or the CRA Defendants acted unreasonably during their reinvestigations. Accordingly,

---

"contract was a closed-end-credit contract that was specific for the purchase of the Chrysler, for a specific amount and for a specific period of time." (Pl.'s Resp. to Defs.' Claims on Each Subject Matter 13.)

and for the reasons stated above, the Court GRANTS SunTrust's and the CRA Defendants' Motions for Summary Judgment, and DENIES Kelly's Motion for Summary Judgment.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record and mail a copy via U.S. mail to the pro se plaintiff.

Date: 2/25/16
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge